UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
ALION SCIENCE & TECHNOLOGY CORP.     :
                                     :   ECF CASE
              Petitioner,            :
                                     :   Civil Action No.: 07-cv-3547 (SHS)
       -against-                     :
                                     :
BOMBARDIER, INC.,                    :
                                     :
              Respondent.            :
------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
# PETITION TO COMPEL ARBITRATION

VENABLE LLP

Edmund M. O'Toole (EO-7939)
Gregory W. Gilliam (GG-2857)
The Chrysler Building
405 Lexington Avenue, 56th Floor
New York, NY 10174
Telephone (212) 307-5500
Facsimile (212) 307-5598

*Attorneys for Petitioner*
*Alion Science & Technology*

Dated: May 3, 2007
       New York, New York

**SUMMARY**

Petitioner Alion Science & Technology Corp. ("Alion" or "Petitioner") petitions this Honorable Court for the entry of an Order compelling arbitration between Petitioner and Bombardier, Inc. ("Bombardier" or "Respondent").

This issue before this Court is straight-forward: whether the identification and application of the appropriate statute-of-limitations question should be decided by the contractually agreed to arbitral panel, or by a court of law. For reasons more fully described below, Petitioner respectfully submits that this question, as well as the underlying merits of the dispute, should be decided by the arbitral panel.

**ALLEGED FACTS**

*Background*

On May 16, 2000, IIT Research Institute ("IITRI"), an not-for-profit company with a principal place of business in Illinois, entered into a subcontract agreement ("Agreement") with Bombardier, under which IITRI agreed to provide Bombardier with a cab simulator and a panoply of technical support, maintenance and training services related to the M-7 railway car.[1] (A copy of the Agreement is attached as Exhibit A to the accompanying Declaration of Gregory W. Gilliam ("Gilliam Decl."), submitted herewith.) Thereafter, on August 30, 2001, IITRI submitted a change order to Bombardier for the provision of additional background items screens for the simulator. Over the next 15 months, IITRI and Bombardier continued to negotiate change orders relating to the work that was to be performed under the Agreement.

---

[1] Bombardier is the prime contractor for production of the M-7 Railway car to the Metropolitan Transit Authority/Long Island Railroad.

In December 2002, approximately 1,600 of IITRI's 1,650 employees purchased substantially all IITRI's assets through an employee stock ownership plan ("ESOP"), thereby creating Alion, a new for-profit entity. As a consequence of the ESOP, Alion became the successor-in-interest to almost all of IITRI's contractual benefits and responsibilities, including the Agreement with Bombardier. All of the personnel, knowledge, expertise, and equipment utilized by IITRI to successfully meet its responsibilities under the Agreement remained in tact, albeit under anew name – Alion. Insofar as the overwhelming majority of IITRI's clients were concerned, the only real effect of the ESOP was that IITRI's letterhead had changed to Alion. Alion duly notified Bombardier of the ESOP by letter dated December 20, 2002. (See Gilliam Decl., Exh C.)

Nevertheless, on January 24, 2003, Bombardier sent a letter to Alion refusing to acknowledge the assignment of the subcontract to the new entity. (See Gilliam Decl., Exh D.) The letter contained the following admonition: "Since there is no contractual relationship between Alion and Bombardier, and until further development with IITRI, we would like to inform you that Bombardier will not hold any meetings with Alion Science and Technology with regard to the M-7 Simulator project." All correspondence between Alion and Bombardier after January 24, 2003, addressed issues relating to IITRI's assignment of the rights and responsibilities of the Agreement and Bombardier's subsequent refusal to recognize Alion.

Despite Bombardier's state of denial with respect to the ESOP, both parties continued to perform certain obligations under the Agreement. Alion continued to perform its required services under the Agreement, and Bombardier continued making payments to Alion – although the payments were nominally made to IITRI who promptly

turned over the payments to Alion. Bombardier made the final progress payment to Alion in February 2004.

On December 20, 2006, Alion sent Bombardier a demand letter. Bombardier failed to respond to Alion's demand. On March 27, 2007, Alion served Bombardier with a Demand for Arbitration. The Demand for Arbitration alleges total damages in the amount of $597,823.18 and includes the following claims: breach of contract for failing to issue change orders consistent with Bombardier's evolving subcontract requirements; breach of contract for failing to provide parts and data in a timely manner; and breach of contract for failure to negotiate change orders.

*The Agreement's Provisions for Arbitration*

Article 803 of the Agreement addresses dispute resolution procedures and states in relevant part: "The provisions of this Article shall constitute the sole means for challenging any determination, order or other action of Bombardier pursuant to Article 801 or 802, or other wise asserting against Bombardier any claim of whatever nature arising under, or in any way relating to, this Subcontract."

Article 803.B.1 divides disputes into two categories, technical and "other." "Other" disputes include disputes "relating to determinations of whether Disputed Work constitutes Change Order work" and "determinations of Excusable Delay," both of which are the subject of Petitioner's Demand for Arbitration. Accordingly, the dispute resolution provisions of Article 803.2 apply.

Article 803.2 states:

With respect to "Other Disputes" defined as any Dispute other than those specified in Subparagraphs (1) above, solely between the Subcontractor

3

and Bombardier, as determined in the sole discretion of Bombardier, the parties agree as follows:

    (i)    "Other Disputes" shall be finally settled in New York by means of a Contractual Dispute Resolution Board (the "CDRB").

    (ii)    The CDRB shall consist of three (3) members, one member to be selected by Bombardier and one member to be selected by the Subcontractor. The third member, to serve as Chairman of the CDRB, will be selected by the CDRB representatives selected by Bombardier and the Subcontractor. Each party shall bear the fees and expenses of its own representative and the parties shall share equally any fees and expenses of the Chairman and any other costs associated with actions and activities of the CDRB.

Article 803.5 establishes the timeline for "other" disputes:

Upon submission of a Dispute Notice regarding "Other Disputes" as provided for above, within ten (10) working days, each party shall select its representative for the CDRB, and within twenty (20) working days, the representatives shall select a Chairman. If the representatives are unable to agree on the selection of a Chairman, then either party may petition the commercial section of the American Arbitration Association to appoint an arbitrator as Chairman. Upon selection, the Chairman shall contact the parties to arrange for a hearing, at which time the parties will have an opportunity to present their respective positions on the merits of the disagreement before the CDRB. The procedures to be followed by the parties at the hearing shall be as determined by the CDRB. In the event of a disagreement by the members of the CDRB, a majority of the members shall govern with respect to such matters. Within thirty (30) days after the CDRB has convened to hear the parties' positions on the merits of the dispute and received all materials and arguments, the CDRB shall issue its ruling on the matter. The decision of the CDRB shall be final and binding on both parties.

In April 2007, after both sides initially selected their representatives in accordance with paragraph 803.5, counsel for Bombardier indicated that it believed that all of Alion's claims in the Demand for Arbitration were barred by the four-year limitation prescribed in New York's Uniform Commercial Code, and, more significantly, that any dispute as to the applicable statute of limitations should be heard in a court of law and not the arbitral

4

panel. Alion disputed both points and asserted that the applicable limitations period is six years, pursuant to NY CPLR § 213, and, further, that any dispute concerning the applicable limitations period, as well as the underlying contractual disputes, should be resolved by the arbitral panel. In a good-faith effort to resolve the dispute regarding the applicable limitations period through negotiation, both parties agreed to stay the time restrictions described paragraph 803.5.

The parties have now reached an impasse and Alion petitions this Court for an order compelling arbitration.

**ARGUMENT**

*I.   Alion has Standing to Compel Arbitration*

As Bombardier is a Canadian corporation, Alion is located in Virginia, and the Agreement required performance in New York, this arbitral dispute involves interstate and/or foreign commerce and is therefore governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. § 1, *et seq*. Although Alion is not a signatory to the Agreement, and Bombardier has consistently refused to acknowledge Alion as the successor-in-interest to IITRI, Alion may rely on Article 803 of the Agreement and has standing to petition this Court to compel arbitration in this matter.

Recently, the Second Circuit permitted a successor-in-interest (a non-signatory) to compel arbitration with a signatory to the underlying agreement. In *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205 (2nd Cir., 2005), Contec L.P. was converted to Contec LLC, and then later merged to become Contec Corporation, the surviving entity. In a subsequent indemnification dispute, the court permitted the non-signatory Contec

5

Corp. to compel arbitration with the vendor, Remote Solution Co., who signed the original contract with Contec L.P. In so doing, the court noted that the evolution of the Contec entity did not alter Contec's address, or ownership, nor did it impact the business relationship with Remote Solution. Thus, the court reasoned that the arbitrable disputes were sufficiently intertwined to estop Remote Solution from avoiding arbitration under the original agreement. *See also, Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,* 271 F.3d 403, 404 (2nd Cir., 2001) (holding that the signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed); *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.,* 198 F.3d 88, 98 (2nd Cir.,1999)(holding the same and noting similar holdings by courts in the Fourth and Eleventh Circuit Courts).

Here, the dispute regarding the change orders is clearly one contemplated by the inclusive language of Article 803. Bombardier is a signatory to the Agreement and agreed to the terms of Article 803. Moreover, the new entity and non-signatory, Alion, is hardly a stranger to Bombardier. The address for Alion is the same as it was for IITRI; the leadership and project personnel at Alion is the same as it was for IITRI; and, probably most significantly, production and services continued under the terms of the Agreement for years after the ESOP and Alion's notification to Bombardier of the new entity.

Thus, the issues that Alion seeks to resolve in arbitration are "sufficiently intertwined" with Agreement signed by IITRI and Bombardier, since the dispute arises out of the performance of the contract and involves essentially the same persons who

committed to the Agreement. Accordingly, Alion has standing to ask this Court for an Order to compel arbitration of both the statute of limitations issue and its underlying claims.

## II.    *The Statute Of Limitations Dispute Should Be Settled By The Arbitral Panel*

Under the FAA, issues of statutes of limitations should be decided by the arbitral panel, rather than a court. *PaineWebber, Inc., v. Bybyk*, 81 F.3d 1193 (2nd Cir., 1996). In *Bybyk*, the securities agreement stated that any arbitration under the agreement was subject to the FAA. It also contained a choice of law provision which provided that "[t]his agreement and its enforcement shall be construed and governed by the laws of the State of New York." The Second Circuit noted that several provisions in the agreement manifested the parties' intention to arbitrate all issues, including arbitrability: "[A]ny and all controversies . . . concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement . . . shall be determined by arbitration . . ." *Id.* at 1199. The Court held that because "[t]he parties' broad grant of power to the arbitrators is unqualified by any language carving out substantive eligibility issues (with or without specific reference to timeliness) for resolution by the courts," the issue of timeliness was properly subject to arbitration. *Id. See also Conticommodity Services Inc.*, 613 F.2d 1222, 1227 (2nd Cir., 1980)("[i]n the absence of express language in the contract referring to a court questions concerning the timeliness of a demand for arbitration, the effect of a time limitation embodied in the agreement is to be determined by the arbitrator"); *Van Slyke v. Commercial Credit Corp.*, 1995 WL 766399, *3 (N.D.N.Y. Dec. 29, 1995)(collecting cases and citing *Conticommodity Services Inc.*).

7

This principle finds even greater reinforcement where, as here, the language of the arbitration clause submits "any claim of whatever nature arising under" the agreement to the contractual dispute resolution procedures as the "sole remedy in connection with any dispute." *See John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 54 (2nd Cir., 2001) (citing *Bybyk* and referring question of arbitrability of dispute to arbitrators where contract contained similar language).

More recently, the New York Court of Appeals also has held that issues of timeliness are reserved for the arbitrator. *Diamond Waterproofing Systems, Inc. v. Liberty Owners Corp.*, 4 N.Y. 3d 247 (2005). In *Diamond Waterproofing*, the plaintiff commenced an action against the defendant for faulty repair and reconstruction work. The contract contained an arbitration provision stating that the parties "agreed to submit '[a]ny controversy or claim arising out of or related to the Contract' for arbitration." *Id.* at 253. The contract also contained a choice of law provision, which provided that "[t]he Contract shall be governed by the law of the place where the Project is located." *Id.* The defendant alleged that the action was not timely and that the issue of timeliness should be determined by a court. The Court of Appeals first noted that the contract was subject to the FAA because the project affected interstate commerce. The Court then held that "[t]he parties did not express an intent to have New York Law govern their agreement's enforcement. Therefore, timeliness issues should be determined by the arbitrator." *Id.*

In *Joseph Gunnar & Co., LLC v. Bridgeman*, 2007 WL 684963 (decided March 7, 2007), the Supreme Court of Nassau County considered the issue in the context of a security agreement, where timeliness was just not a procedural issue in the case but "the issue in the case". *Id.* The Court there held:

8

> [T]he language in the agreement between the parties did not delegate to the courts the issue of timeliness, especially as it is, in the present context, not a matter of enforcement but of substantive law. It is the kind of dispute, like a "procedural question which grow[s] out of the dispute and bear[s] on its final disposition' [which] are presumptively for the arbitrator to decide." *Pellegrino v. Auerbach*, 2006 WL565643 (S.D.N.Y.) at 2 citing to *Howsand v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2000) and *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-547 (1964).

In this case, while the Agreement does not specifically invoke the FAA, the FAA certainly applies because Bombardier is a Canadian firm and the Agreement thus necessarily involves commerce "with foreign nations." 9 U.S.C. § 1. The arbitration provisions in the Agreement are extremely broad. Article 803.A states, in relevant part:

> "The provisions of this Article shall constitute the Subcontractor' sole means for challenging any determination, order or other action of Bombardier pursuant to Article 801 or 802, or otherwise asserting against Bombardier any claim of whatever nature arising under, or in any way relating to, this Subcontract . . . These dispute resolution procedures shall be the parties' sole remedy in connection with any dispute."

Moreover, Article 803.2.ii states that, "'Other Disputes' shall be finally settled in New York by means of a Contractual Dispute Resolution Board." Article 803 makes no mention that New York law applies to the arbitration. Indeed, the Agreement's Choice of Law provision is Article 805: "[t]his Subcontract shall be deemed to be executed in the City of New York, State of New York, regardless of the domicile of the Subcontractor, and shall be governed by and construed in accordance with the laws of the State of New York."

The language in the Agreement thus supports the position that issues of timeliness should be determined by the arbitral panel. As in *Diamond Waterproofing*, the choice of law provision here makes no mention of "enforcement." Similar to *Bybyck*, the Agreement's arbitration provisions, which refer to arbitration as the "sole remedy in

9

connection with any dispute" (emphasis added), clearly indicate the parties' intention that all matters be subject to arbitration. And much like *Joseph Gunnar*, timeliness is an procedural issue that is reserved for the arbitral panel. For these reasons, any disputes involving statute of limitations issues in this case should be decided by the arbitral panel.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court enter an order compelling arbitration between Petitioners and Respondent.

Dated: May 3, 2007
New York, New York

          Venable LLP

          By: _____
            Edmund M. O'Toole (EO-7939)
            Gregory W. Gilliam (GG-2857)

          The Chrysler Building
          405 Lexington Avenue, 56th Floor
          New York, NY 10174
          Telephone (212) 307-5500
          Facsimile (212) 307-5598

          *Attorneys for Petitioner*
          *Alion Science & Technology*

OF COUNSEL:

J. Scott Hommer
Kristen E. Burgers
Venable LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
Telephone: (703) 761-1600